

<div style="float:right">
Prisoners' Rights Project
199 Water Street
New York, NY 10038
T (212) 577-3530
www.legal-aid.org

John K. Carroll
*President*

Janet E. Sabel
*Attorney-in-Chief*
*Chief Executive Officer*

Mary Lynne Werlwas
*Director*
Prisoners' Rights Project
</div>

**VIA ECF ONLY**

June 25, 2020

Hon. Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Benjamin v. Brann*, No. 75-CV-3073 (LAP)
              Pending cross motions regarding cooling of punitive segregation areas

Your Honor:

      We are counsel for the plaintiff class in this action about environmental conditions in the jails maintained by the New York City Department of Correction ("DOC"), and we write to again implore the Court to resolve the pending cross-motions regarding cooling and ventilation of punitive segregation areas – motions that were first filed in 2013, were the subject of a hearing before Judge Baer in 2014, and which have been pending without resolution since 2017. As the parties advised the Court over seventeen months ago:

> Two closely related motions are pending: plaintiffs' motion for enforcement of the Court's prior order directing defendants to "provide adequate ventilation and cooling in punitive segregation areas, including, but not limited to, CPSU at OBCC and MHAV II [sic: refers to MHAUIII] at GRVC. . . ,"  and defendants' cross-motion to terminate that order. The relevant documents can be found at ECF Nos. 578-587, 591, 593, 596, 605-607, 609, 611, 614, 646-650, and 653-654.

(ECF No. 668). Although we are aware that Your Honor was not the presiding judge when we filed the enforcement motion in 2013, the motions concerning cooling of punitive segregation and other restrictive housing areas were fully briefed by September 2017, after the case was transferred to this Court following Judge Baer's death. Plaintiffs' request for discovery and defendants' supplemental letter were also filed by this time. These motions have therefore been pending for close to three years without resolution.[1]

---

[1] As a consequence of the motions remaining unresolved, the Office of Compliance Consultants ("OCC") has informed both the parties and the Court that it will not monitor conditions of punitive segregation and other restrictive housing areas unless and until the Court resolves these motions in plaintiffs' favor. *See* Office of Compliance

In July of last year, plaintiffs wrote to the Court to report our grave concerns about the July 19-21 Heat Emergency and its impact on the plaintiff class. We reported with sincere alarm that DOC, despite experiencing heat indexes of up to 110 degrees, "continued its practice of locking individuals into non-air-conditioned segregation cells *for up to 25 hours straight* – from Saturday mid-day until Sunday mid-day." (ECF No. 673 (emphasis in original)). We also informed the Court that based upon reports from a New York City Councilmember who toured the city jails during the Heat Emergency, the City's ameliorative measures – such as distribution of fans – were a complete failure. (*Id*. (citing Brad Lander (@bradlander), TWITTER (July 21, 2019, 6:57 p.m.), https://twitter.com/bradlander/status/1153076617218023427 (last visited June 25, 2020) ("10 new fans had arrived on Friday. But they needed to be assembled, and because the maintenance staff don't work weekends, well, they spent the weekend in boxes. As for something 'criminal' in this justice system, that seemed like it today.")). In light of the ongoing emergency, plaintiffs requested that Your Honor "tour the non-air-conditioned restrictive housing areas such as the ESH or Secure Unit; deny defendants' motion; and grant plaintiffs' motion and relief requested." (*Id*.)

When more than two months passed from Department's botched response to the July 2019 heat emergency without a ruling on the pending motions or acknowledgment of plaintiffs' July letter, on October 2, 2019, plaintiffs again wrote to supplement the record. In this letter, plaintiffs cited damning admissible evidence from the New York City Board of Correction ("BOC") about the DOC's poor performance during the July 2019 Heat Emergency. As set forth in plaintiffs' October 2 letter, "the BOC report confirmed our fears about conditions in ESH. The BOC's report shows that during the Heat Emergency, ***temperatures in ESH housing units reached 97.8 degrees.***" (ECF No. 677 (emphasis in original, citation omitted)). As evidence at the hearing before Judge Baer unambiguously established, "solid cell doors hold heat, block cross-ventilation, and prevent meaningful monitoring of persons languishing behind them, making it unlikely that a person in distress will be noticed." (*Id*. (citing Hr'g 34-36, 41)). For those reasons, "even healthy individuals are at 'extreme risk' of heat stroke and other heat-related illnesses if they are confined 'behind a solid door' for hours on end." (*Id*. (quoting Hr'g. Tr. 39)).

Few things are as predictable as extreme heat in the summer, which officially began last Saturday, June 20. Without this Court's prompt intervention, the Department is again likely to adhere to its draconian lock-in procedures and ineffective "ameliorative measures," *even during declared heat emergencies*, thereby knowingly exposing the plaintiff class to extreme heat and serious risk of heat-related illness.

Last October, we reported to the Court that "[t]hese class members require relief." (*Id*.) The same is true today. We therefore pray that the Court takes immediate action by denying defendants' motion to terminate and grant plaintiffs' motion to enforce. Anything less puts this Court's

---

Consultants, Report on Environmental Conditions, January – April 2020, at 27 ("On February 13, 2020, the parties discussed the censuses and statuses of the different punitive segregation areas, but there is no agreement for OCC monitoring of these locations. Since then, there have been no further discussions. Plaintiffs' counsel now asserts that OCC should 'demand' pertinent records from Defendants while acknowledging that the matter is heavily disputed between the parties, with a motion pending before the Court. Without consent of the parties, OCC will not begin monitoring a situation that is still unresolved and awaiting decision by the Court." (internal citation omitted)).

imprimatur on exposure of pretrial detainees to temperatures approaching 100 degrees behind solid cell doors for up to 25 consecutive hours.

                                          Respectfully submitted,

                                          /s/

                                          Robert M. Quackenbush

cc:      Chlarens Orsland, counsel for defendants
           (via ECF)